# Third District Court of Appeal

## State of Florida

Opinion filed October 04, 2017.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D16-2457
Lower Tribunal No. 12-33200
_____

## Rodney Petithomme,
Appellant,

vs.

## Monise Petithomme, Modeline Petithomme, and Wilkins Petithomme,
Appellees.

An Appeal from the Circuit Court for Miami-Dade County, John Schlesinger, Judge.

Faudlin Pierre, for appellant.

Vera + Skiscim PL, and Michael J. Skiscim and Michael A. Vera, for appellees.

Before ROTHENBERG, C.J., and SALTER and LINDSEY, JJ.

ROTHENBERG, C.J.

The plaintiff below, Rodney Petithomme ("Rodney"), appeals a final

summary judgment entered in favor of three of the four defendants below, Monise

Petithomme ("Monise"), Modeline Petithomme ("Modeline"), and Wilkins Petithomme ("Wilkins") (collectively, "the appellees").[1] As genuine issues of material fact exist, we conclude that the trial court erred as a matter of law by entering summary judgment in favor of these three defendants. Therefore, we reverse the order under review and remand for further proceedings.

This appeal stems from a dispute between family members relating to real property purchased in early 2004 in the name of Pharamon Petithomme ("Pharamon"), who passed away in October 2010. In August 2012, Rodney filed a complaint against the Estate of Pharamon Petithomme ("the Estate"); his sister, Monise; Pharamon's daughter, Modeline; and Pharamon's son, Wilkins (collectively, "the Defendants"), alleging as follows.

In early 2004, he (Rodney) and Pharamon entered into an oral agreement whereby Pharamon agreed to take title to the subject real property in trust for Rodney, and in exchange, Rodney agreed to "furnish the money to pay the property."

Following the oral agreement, Pharamon obtained a loan to purchase the property, and after the property closed in Pharamon's name, Rodney, not Pharamon, moved into the property. Thereafter, Rodney began to pay the property taxes and mortgage, and he made improvements and repairs to the property.

---

[1] Certain claims filed against the Estate of Pharamon Petithomme remain pending.

On December 8, 2004, while Pharamon was critically ill, Monise, without Rodney's knowledge, "fraudulently induced and forged" Pharamon's signature on a quitclaim deed in which Pharamon conveyed the property to himself and Monise as joint tenants with right of survivorship. At some point thereafter, Rodney permitted Monise and her husband to move into the property in exchange for rent. Rodney instructed Monise to make the rent checks payable to Jean Petithomme,[2] and instructed Jean to remit Monise's payments to the note holder. Rodney would then pay the balance of the monthly mortgage payment with his own funds.

A few months after Jean passed away in August 2008, Monise stopped making the rent payments, and therefore, Rodney asked Monise to move out of the property. After Monise refused to move out, disputes ensued between Rodney and Monise, and thereafter, Monise ousted Rodney from the property.

Based on these allegations, Rodney asserted the following counts: Count I—quiet title against all Defendants; Count II—purchase money resulting trust against the Estate; Count III—ejectment against Monise; and Count IV—unjust enrichment against Monise based on her failure to pay rent. In response, Monise and Modeline filed an answer and affirmative defenses, denying material allegations. The Estate filed an answer denying all allegations in the complaint and asserted as an affirmative defense that Pharamon's interest in the property

---

[2] Jean Petithomme is Rodney's, Pharamon's, Monise's, and Modeline's brother.

"was 'with right-of-survivorship' and therefore negates the necessity to probate his estate as there are no assets and/or real property." Wilkins did not file an answer, and the trial court entered a default against him.

Following discovery, Rodney filed a motion for partial summary judgment as to his claims to quiet title (Count I), for a purchase money resulting trust (Count II), and for ejectment (Count III), attaching numerous exhibits, affidavits, and depositions, including a $500 check remitted by Rodney for the initial purchase deposit and two cashier's check totaling over $12,057.82 utilized to purchase the property. In response, the appellees filed an opposition, attaching additional exhibits.[3] On May 14, 2015, the trial court denied Rodney's motion for partial summary judgment finding that there were material issues of fact in dispute.

Approximately a year after the trial court denied Rodney's motion for partial summary judgment, the appellees filed a motion for partial summary judgment. As to Rodney's claim for a resulting trust filed against the Estate (Count II), Monise argued that, as the sole title owner of the subject property via the quitclaim deed, she was the correct person to defend the claim. Monise further asserted that there was no resulting trust because Rodney failed to pay the purchase price or "bind himself by an absolute obligation to pay the purchase price at the time title vested in Pharamon." The appellees also sought summary judgment as to the

---

[3] Although a default had been entered against Wilkins, he joined in the opposition filed by Monise and Modeline.

4

claims to quiet title (Count I), for ejectment (Count III), and unjust enrichment (Count IV). Finally, the appellees asserted that the only remaining issues to be decided at trial were: (1) whether the $500 contract deposit was a gift or a loan, (2) whether the $12,057.82 down payment was provided by Rodney, and (3) whether a resulting trust was created as to either the alleged deposit and/or the alleged down payment.

The appellees submitted evidence in support of their motion for partial summary judgment, including Monise's affidavit in which she averred that she is the only person who paid the mortgage from the date the property was purchased in early 2004; that in December 2004, she, Rodney, and others were present when Pharamon executed the quitclaim deed; and that Pharamon appeared to be competent when he executed the quitclaim deed.

Following a hearing, the trial court entered summary judgment as to Count II (resulting trust) in favor of the appellees and, as to Counts I (quiet title), III (ejectment), and IV (unjust enrichment) in favor of the appellees. In addition, the trial court ruled that the order has no effect as to the claim against the Estate for a resulting trust relating to the $500 contract deposit or the two cashier's checks totaling $12,057.82, which issue remains pending for trial. Rodney's appeal followed.

Rodney contends that the trial court erred by entering summary judgment in

favor of the appellees where genuine issues of material fact exist. Based on our de novo review, we agree. See Volusia Cnty. v. Aberdeen at Ormond Beach, L.P., 760 So. 2d 126, 130 (Fla. 2000) (noting that a final summary judgment is reviewed de novo); Tropical Glass & Constr. Co. v. Gitlin, 13 So. 3d 156, 158 (Fla. 3d DCA 2009).

"[S]ummary judgment is only appropriate when the 'pleadings and summary judgment evidence on file show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Demir v. Schollmeier, 199 So. 3d 442, 444-45 (Fla. 3d DCA 2016) (quoting Fla. R. Civ. P. 1.510(c)); see also Volusia Cnty., 760 So. 2d at 130. Further, "[i]f the record reflects even the possibility of a material issue of fact, or if different inferences can be drawn reasonably from the facts, that doubt must be resolved against the moving party and summary judgment must be denied." Cox v. CSX Intermodal, Inc., 732 So. 2d 1092, 1095 (Fla. 1st DCA 1999).

In the instant case, Rodney asserted that he and Pharamon entered into an oral agreement whereby Pharamon agreed to take title to the subject real property in trust for Rodney, and in exchange, Rodney agreed to furnish the money to pay for the property. In Florida, "[a] resulting trust arises where . . . a person furnishes money to purchase property in the name of another, with both parties intending at the time that the legal title be held by the named grantee for the benefit of the

6

unnamed purchaser of the property." Key v. Trattmann, 959 So. 2d 339, 342-43 (Fla. 1st DCA 2007) (internal quotation marks omitted); see also Womack v. Madison Drug Co., 20 So. 2d 256, 257 (Fla. 1944) ("A resulting trust must arise, if at all, at the instant the deed is taken and the legal title vests in the grantee. The complaining party must have paid his share of the purchase price, or bound himself to the grantor by an absolute obligation to pay it."); F.J. Holmes Equip., Inc. v. Babcock Bldg. Supply, Inc., 553 So. 2d 748, 749 (Fla. 5th DCA 1989) ("A resulting trust may arise in favor of one who furnishes money used to purchase property the legal title to which is taken in the name of another. The equities in this direction are especially strong when the parties intended that the title was to be held by the legal grantee for the use and benefit of the person supplying the consideration for the purchase."). Further, "[p]ayment of part of the consideration carries with it a proportional interest in the property and the party taking title to the whole becomes the trustee for the other party pro tanto." Towerhouse Condo., Inc. v. Millman, 475 So. 2d 674, 677 (Fla. 1985).

Rodney's claim for a resulting trust cannot be disposed of on summary judgment because genuine issues of material fact relating to this issue exist. Rodney presented evidence to support his claim that he and Pharamon entered into an oral agreement whereby Pharamon agreed to take title to the subject real property in trust for Rodney, and in exchange, Rodney agreed to furnish the funds

7

to pay for the property. For example, the evidence showed that Rodney submitted a $500 check as the initial deposit for the purchase of the subject property; Rodney, not Pharamon, took immediate possession of the subject property following the closing; Rodney paid the mortgage until he was ousted by Monise; and in several forms filled out by Pharamon's family members, including Monise, seeking financial assistance for Pharamon, Monise and Pharamon's family members denied that Pharamon owned any real property. On the other hand, the appellees presented evidence that Pharamon did not intend to purchase the property in trust for Rodney, and Pharamon used his own funds to purchase the property. Although it is clear that the $500 deposit was provided by Rodney, it is unclear whether Rodney merely gifted the $500 to Pharamon, and it is also unclear who provided the funds to obtain the cashier's checks totaling $12,057.82, which Rodney claims he paid towards the purchase price.[4] Thus, Rodney's claim for a resulting trust cannot be disposed of by summary judgment.

In Count I of the complaint, Rodney sought to quiet title to the subject property, asserting that Monise fraudulently "induced and forged Pharamon's signature" while Pharamon was ill. Further, based on his claim that he was the rightful owner of the property, Rodney also filed a claim to eject Monise (Count III) and for unjust enrichment against Monise based on her failure to pay rent

---

[4] These are only a few of the disputed issues of material fact.

8

(Count IV). In moving for summary judgment, the appellees presented evidence reflecting that on December 8, 2004, Pharamon executed the quitclaim deed in front of others, including Rodney; Pharamon was not suffering from any sort of mental deficiency when he executed the quitclaim deed; and Pharamon's mental deficiencies did not arise until 2010, years after he executed the quitclaim deed. In contrast, Rodney presented evidence that the week after executing the quitclaim deed, Pharamon was admitted to the hospital with a specific type of dementia and an altered mental status, which conditions existed three weeks prior to the hospital admission, and therefore, Pharamon's mental deficits existed at the time he executed the quitclaim deed. The conflicting evidence clearly demonstrates the presence of material issues of fact, and therefore, the trial court erred by entering summary judgment in favor of the appellees as to Rodney's claims to quiet title (Count I), for ejectment (Count III), and for unjust enrichment (Count IV).

Accordingly, because there exist genuine issues of material fact, we conclude that the trial court erred by entering final summary judgment in favor of the appellees. We therefore reverse the order on review and remand for further proceedings.[5]

---

[5] As we are reversing the order under review and remanding for further proceedings, we do not address Rodney's assertion that the trial court granted certain appellees relief that was not sought in the complaint. For example, although Count IV for unjust enrichment was only asserted as to Monise, the trial court granted relief as to the three appellees, including Wilkins, who had defaulted.

9

Reversed and remanded.