452 So.2d 992 (1984)
Cristian SOCARRAS and Celeste Socarras, Appellants,
v.
Emma YAQUE and Ernesto Yaque, Appellees.
No. 83-2308.
District Court of Appeal of Florida, Third District.
June 19, 1984.
Rehearing Denied July 30, 1984.
*993 Cummins & Wanshel, Coral Gables, and Lawrence Wanshel, Miami, for appellants,
Floyd, Pearson, Stewart, Richman, Greer, Weil & Zack and Bruce A. Christensen and Scott J. Feder, Miami, for appellees.
Before HUBBART, BASKIN and JORGENSON, JJ.
JORGENSON, Judge.
The Socarrases appeal that portion of the Yaques' final judgment of dissolution which imposes upon the Socarrases an equitable trust, the corpus of which is the marital home, in the Yaques' favor. For the following reasons we reverse.
Emma Yaque petitioned for a divorce and, claiming that the Socarrases held it in trust for the Yaques, sought the marital home as lump sum alimony. The trial court granted the divorce and found that the marital home, a condominium unit
in which the Yaques have continuously lived prior to the date of purchase, was purchased in the name of Cristian Socarras and Celeste Socarras. The Socarras[es] always intended that this Unit would be the residence of the Yaques; it was never intended to be the residence of the Socarras[es].
The Socarras[es] lent their name and financial credibility to the Yaques for the purchase of the unit to help the Yaques secure it for their residence. Practically all the payments for the condominium unit have been made by the Yaques including the down payment. The evidence clearly reveals, by virtue of two checks in the sum of $500 each dated August 1, 1977 and September 10, 1977 paid to Riv-Arc Realty Company and drawn upon the joint account of Ernesto and Emma Yaque, that the Yaques paid the deposit of $1,000 for the purchase of the Unit. The testimony further shows that at the closing the Yaques paid the remaining balance owing of $383.19. There was not one iota of testimony to indicate that the Socarras[es] paid one penny of consideration for the purchase of the condominium unit other than lending their name to obtain the mortgage loan because the Yaques were unable to qualify for a mortgage loan.
The condominium unit was purchased in the name of the Socarras[es] to be held in trust in favor of the Yaques.
... .
The clear and convincing evidence shows that the condominium unit ... purchased by the Yaques in the name of Cristian and Celeste Socarras has been held in trust for the Yaques.
The record reveals that the Yaques moved into their marital home, a rental apartment, in September, 1976, and that in July, 1977, they received a notice that their apartment was to be converted into a condominium unit. The Yaques wanted to remain in their apartment but were unable to qualify for a mortgage sufficient to pay the purchase price. They turned to the Socarrases. As characterized in the Yaques' brief, Celeste Socarras, Ernesto Yaque's aunt, had raised him "like a son" and "would do anything for him," her husband, Cristian, "considered himself like Ernesto's father" and over the course of the Yaques' seventeen-year marriage the Socarrases *994 had established a "perfect" relationship with Emma.
The Socarrases signed the loan and mortgage application papers that Ernesto brought to them, procured a $21,200 loan which was used to purchase the condominium unit and attended the closing to sign the final documents associated with the sale. The Yaques supplied the balance of $1,383.19. The Yaques, thereafter, made the mortgage payments on the condominium unit, paid the real estate taxes, insurance and maintenance costs, retained the ownership documents (which reflected title in the Socarrases), attended the condominium association meetings (which were restricted to unit owners) and, of course, lived in the condominium unit. The Socarrases never declared on their income tax returns rental income or depreciation associated with the condominium unit nor did they take a deduction for interest and maintenance.
The trial court has imposed an implied trust, either constructive or resulting, but has not justified nor presented a factual statement capable of justifying such an imposition; nor will facts from the record justify the imposition of such a trust.
A constructive trust will be imposed when one through fraud, abuse of confidence or through other questionable means gains something for himself which in equity and good conscience he should not be permitted to hold. Turturro v. Schmier, 374 So.2d 71 (Fla. 3d DCA 1979). The trial court made no such finding nor does the record support the view that the Socarrases met any of the criteria requisite for the imposition of a constructive trust.
A resulting trust arises when one party pays the consideration for the purchase of property but title is taken in the name of another. Department of Revenue v. Zuckerman-Vernon Corp., 354 So.2d 353 (Fla. 1977). It must appear from the entire transaction that there is an obligation on the part of the holder of the legal title to hold it for the benefit of someone else, Frank v. Eeles, 152 Fla. 869, 13 So.2d 216 (1943); the resulting trust must arise, if at all, at the instant legal title vests and the alleged beneficiary must have paid the purchase price or bound himself by an absolute obligation to pay it, Womack v. Madison Drug Co., 155 Fla. 335, 20 So.2d 256 (1944).
In the present case the titleholder, not the alleged beneficiary, supplied a vast majority of the consideration: $21,200. Other than the deposit and closing costs, the Yaques only expended money on the property after the legal title vested, and it should be noted that these expenditures were concurrent with and incident to the Yaques' habitation and enjoyment of the property. Finally, there is no evidence in the record that the Yaques were at any time obligated to reimburse the Socarrases for the Socarrases' $21,200 purchase. Because not one of the criteria has been met, the facts in this case simply will not support the imposition of a resulting trust.
Reversed.